Good morning, everyone. It's nice to see you all today. This morning, our colleague Judge McKee is joining us remotely, and for administrative purposes, I'm simply handling some of the presiding duties, but he is in fact our presider. And with that in mind, I have the privilege of calling this morning's case on behalf of myself and my two colleagues, McLaren v. UPS Store and Trapiccio v. UPS Store, appellate numbers 22-1379 and 22-1380. Counsel. Thank you, Your Honor. May it please the Court. I'm Joseph Palmore here on behalf of all the defendants except for JB&A Enterprises. Mr. Schwartz is here, who represents that defendant, but I'll be taking all of our time. With the Court's permission, I'd like to save three That'll be granted. Thank you. Defendant's removal was timely, and McLaren failed to establish her entitlement to the local controversy exception to CAFA jurisdiction. On timeliness, neither of Section 1446B's 30-day deadlines was triggered here, so neither expired. So your position is that no pleading, either plaintiff produced, meaning the complaint of the amended complaint in McLaren and the complaint in Trapiccio, gave notice to federal jurisdiction, correct? Correct, because neither gave notice of the amount in controversy or the numbers that were necessary to calculate the amount in controversy. And the same way we choose to, I'm sorry, as to no other paper. So Section 3, you're saying the same is true? Correct. There's no other paper either. In the McLaren case, the only paper that's been identified is the discovery that defendants provided to plaintiffs. It wasn't received by defendants. There was no such paper, even that is absent in the Trapiccio case. And the case law from multiple courts of appeals, including this one, is completely clear and completely one-sided about what it takes to trigger these 30-day deadlines. You have to, you look to the four corners. Have we ever ruled in a CAFA case? I assume you're relying upon Foster in a later 2016 case where we cite to Foster in a footnote, but we've never ruled in a CAFA case, have we? No, you haven't, Judge McKee, but of course these deadlines are generally applicable to removal. And in fact, to the extent there's a difference between CAFA and general removal, it is in favor of removal in a CAFA case because the kind of presumption against removability doesn't apply. But these are generally applicable removal deadlines. And this court in Foster, and again in Papps, made clear that when the question is, you look at the four corners of the pleading and you see if you could discern the amount of controversy and the other elements of jurisdiction from those papers. So your position is that the other paper, if it existed, was only in McLaren because that's where the discovery was made, but no like paper existed in Shapiccio. Is that correct? That's correct. I want to be clear that we don't acknowledge that that even would satisfy the other paper requirement because it has to be received by the defendant. So your position would be, as my, I understand the document was produced in Discovery around December 11th? Yeah, I think that's right, Your Honor. So if on December 11th, a half an hour after you forwarded to them by email, if the plaintiff had forwarded you back the same document, it would have been received and the clock would have started, say, on December 11th? I think that that is what the case law contemplates. I mean, obviously that makes sense. These are formalistic rules. And that's not the question. The question is, does it make sense? We agree it's formalistic. In fact, it does make sense, Judge McKee, because as multiple courts have held, this statute and these deadline provisions put the plaintiff behind the wheel. They give the plaintiff control. So the plaintiff can either have a complaint that states the bases for federal jurisdiction or can trigger the second deadline by providing another paper. When was that document generated? I don't know. I can't tell you exactly when it was generated, but it was obviously generated before it was provided. The record doesn't disclose it. I don't know. So you can't represent whether it was disclosed only in response to a discovery demand or whether it was something that existed in the corporate records, albeit maybe in a different form? I mean, there was a database that was searched. The declarant said that. But when that kind of search was done, I can't represent when that happened. You said it was part of a database that existed. In, I think, both complaints, the plaintiff represents, hey, defendant, you have documents that will have this information. Could one read the complaint as being a disclosure that you have the access to it and from the four corners could have figured out the existence of the amount in controversy? No, Your Honor, because the four corners doesn't have the answer. It may have the question, but it pointed outside of the document for the answer. And that's dispositive under D-1. And this fact that the defendants presumably could have figured this out earlier doesn't distinguish this case from the cases that we cite. In Romulus in the First Circuit, the defendants had that meal break data from the beginning of the case. They didn't remove for 17 months. In Mumfrey in the Fifth Circuit, the only missing piece was the salary of the plaintiff who was an employee of the defendant. The defendant had that information and didn't remove the sales data in Grazer, the car sales data in Cuxhausen. Case after case has dealt with this scenario where the- So are you saying then that all those cases teach the following would be a proper and permissible method in a CAFA case because you don't have that one-year deadline to remove, right? Right. It's the eve of trial. You could remove on the eve of trial. You're about ready to walk in the courtroom and pick the jury. You could remove then? Personally, a case could be removed then? In theory, yes. So I'll acknowledge that. Then I'll fight the hypothetical, which is I think it's quite unlikely you would get to the eve of trial without some paper that came from the the facts necessary to establish- So you're saying if it was like a final pre-trial order where the plaintiff puts in their final pre-trial or their calculation of damages 30 days before trial, that could happen? If that's the first time the plaintiff physically produces it, correct? Yes. But the plaintiff, of course, in many cases could have done it earlier. Here, McLaren could have done it earlier. Could it produce back the very document that she received from the person who says, I need to receive it to have an obligation? Yes. And again, that's rhyming-less. The data went from the defendant to the plaintiff. Then the plaintiff looked at it and sent an email back to the defendant. And the First Circuit was quite clear that it was that email back was the B-3 other paper. The data provided by the defendant wasn't because it wasn't received by the defendant. Mr. Palmore, if we're going to be formalistic, is it possible you removed too early? The removal may be made within 30 days after. If nothing has ever been disclosed, is it possible you're not entitled to remove yet? No, Your Honor. Multiple courts of appeals have addressed that question. To be clear, that's not an argument that the plaintiffs here have made. But we cite three of those cases on page 19 of our brief. Grazer from the Sixth Circuit also tackles that issue. And they hold that there is no such thing as premature removal, that the substantive authority to remove comes from 1441 and 1453, and that so long as neither of these deadlines in 1446B is triggered and therefore runs, then removal is timely. And there's a lot of common sense behind that, because the idea that you remove too early would lead to the conclusion that it would be remanded, and then you just have to remove again later. So the courts have, every court of appeals that I've read and that's been cited in these briefs at least, has rejected that reading of the statute. Let me go a little bit more to the... Go ahead, Judge Fortch. No, I'm fine. Go ahead, Judge. I want to pick up a little bit on Judge Fortch's earlier scenario where she suggested that if what had happened here was that the defendant sent the spreadsheet, and I think it's the spreadsheet we're talking about that gave rise to the calculation, sent the spreadsheet to you, I'm sorry, and then sent it back. You simply refused it and sent it back. And then the defendant sends the same thing again. That would be sufficient under subsection three to be after receipt of other paper, and you're conceding that's okay. And you have no problem with that, even though logically it kind of tugs a little bit. But what if it was a situation where the document, the spreadsheet was sent to you? You either receive, you refuse to accept it, or let's say it was sent to the wrong address, and it's returned back to you, the very same spreadsheet. The parties never really touched it. It's simply sent to the wrong address, and then it's returned back to you. At that point, you're saying under B3, the 30-day clock would be triggered because you would be in receipt of a other paper, even though the defendant had done nothing to send it to you. Yeah, that's an interesting hypothetical, Judge McKee. I mean, I don't, the courts that have dealt with, looked at this issue have said it has to be received from the plaintiff, that it's the plaintiff's paper. So I don't think if there was that kind of bounce-back situation, where the defendant sent it to the wrong address... Is that texturally supportive though? Go ahead, Judge. I think it is. It doesn't, Your Honor, but if you look at the documents that would be received... Lists in order, which wouldn't be from the... Right, so I think it's from the plaintiff or from the court. I think what's quite clear is it's not from the defendant. It's an unnatural, would be an unnatural formulation to see, to say that someone could receive something from themselves, and the subsection 3, 30 days after receipt by the defendant of copy of other paper. It doesn't say anything other than it's got to be received by the defendant, not sent from the plaintiff. I take the point, Your Honor, that in context, that's how courts have read it from the plaintiff or from the order. I don't think you have to tackle that here because we didn't receive it at all. It was our document and it went in the other direction. I see I'm in my rebuttal time. If I could just briefly address local controversy. The rebuttal time is actually set aside separately, so you'll get it afterwards. Understood, understood. I don't know if my colleagues have further questions on sort of that, the timeliness issue. No, but we do want to hear about the local controversy. Yeah, we do. Several questions. So I had a local controversy question. You say that the McLaren, the request for production in discovery already made in state court answers the question of whether the two thirds could be satisfied. And you're, as I understand the brief, it says we gave a response that says we don't have responsive information. Correct. What makes it fruitless? It's still the plaintiff has other avenues. Am I correct to try to identify that the citizenship of the plaintiff class? Well, the plaintiff hasn't identified any other avenues. Maybe they will today. They've said that that the UPS store Inc would have the information. And we've already said we don't. The information we have is that database. We've got the skew codes and kind of the numbers of transactions, but we don't keep records on the names and addresses. So you're simply saying you don't have it, but that doesn't mean it doesn't exist or is not discoverable in some way. Am I correct? Perhaps. I'm not sure how it would be. When you say you, that's not just behalf on behalf of the UPS store. That's also on behalf of the individual store, the individual stores who are in the case in the case. Right. So you can represent that they don't keep any information about the citizenship of the notary notarized documents. Are you able to, if you can't make that representation, I totally understand because you represent the corporate entity and you're speaking for the franchisee. Right. I want to be careful. Right. So the discovery that we answered was to the UPS store Inc. And we said, we don't have the information. Okay. But you can't make that representation on behalf of the individual stores. I can't. I would be surprised if they had it, but I can't make that factual representation, particularly because 160 of them aren't even in case. Okay. But the, but the individual store that is in the case of stores, you, you can't make representation on behalf of them either. I know from Mr. Mr. Schwartz that his client does not have that information. Okay. I don't believe that the individual store, the entities that we represent have it either. But I, I can't, I can't make that as a blanket factual assertion. It hasn't been asked. All they've said is the UPS store Inc. would have the information. Well, let me ask, uh, so there's this first issue about whether two thirds of the classroom, New Jerseyans, and you're saying we don't have this, but I can't say that these other stores that, you know, might not have it, or they might not have other avenues, but they'd also have to show that they're, they're suing a significant, not suing a significant New Jersey and defendant here. Um, got this, this question. Uh, first of all, we have the, the, uh, you know, the, the plaintiffs are saying joint and several liability is enough to say that they are seeking significant relief and you resist that, uh, understanding. Why is it not enough just to tack on a, there's joint and several liabilities. So significant relief is sought from all the defendants, your Honor. I think if that were the rule, then a plaintiff could, uh, prohibit, you know, could, could plead themselves into this exception in every single case. Uh, the Atwood case from the eighth circuit also had an allegation of joint and several liability. And nonetheless, the court still did the kind of comparative analysis that this court and Kaufman said is called for. Uh, and Kaufman and Vodeniker, if I'm pronouncing that correctly, also said that there was a numerical element to it. Uh, you have to see how, not necessarily, you don't necessarily have to show that all class members would have a claim against the local defendant, but there has to be kind of a substantial number of them that do. And here, when you're talking about one out of 161, I think that's not, that's not satisfied. And I refer the court, if you want to look at kind of what McLaren pled, JA 122 through 126, there's paragraph after paragraph, which shows that the UPS store Inc is the real target here. The local franchisees are described as mere agents, um, that, that they say that UPS store dictated the pricing policy. That's who this complaint is going after. That's on the significant conduct point, but we'll finish the relief. I do want to ask you about the conduct. So McLaren's complaint, paragraph 49 says on information of belief, this fee is tacked on at the direction of the UPS store and Tropicio's complaint at 25 to 20 paragraphs, 25 to 26, this is a uniform policy. Do you dispute that? Do you intend to dispute that? Can you affirm that as to whether this, this pricing policy is coming from corporate HQ? We, we, we, at the appropriate time, if it, if it proceed, the case proceeds, we will dispute that. Uh, but for purposes of the local controversy test, you look, you look at the allegations and the complaints and they clearly pled. And this does go to significant basis, judge Beavis. I mean, that's what Kaufman says. You do this kind of, whether significant conduct is by, yeah, you do a comparative, that's why I'm getting at it. You do a comparative analysis, kind of who's the real target that you've alleged in your complaint and who's kind of the peripheral figure. And here are the real target. You read those paragraphs and there's only one conclusion you could reach that the UPS store Inc is the real target and the franchisees are just kind of tacked on. Well, there could be no venue. There would be no basis for them to say there was a violation of New Jersey state law without having the actions at the franchise East store. Correct. I think that's correct, but that's, you know, I think I'm hard pressed to see that they're peripheral to this. They, isn't it more fair to say that, and maybe it's whether you call it agent, I'm trying not to use a legal definition of trying to be factual, whether there's an interconnectivity between the policy and the implement or of that policy. And so aren't they comparatively equal in terms of causing the quote I don't think so, your honor, because this really, because Kaufman does call for a, for a comparative analysis. And if you look at, and other courts follow that same approach. So in, in Atwood, it was the kind of the regional managers who are implementing the policy. Whereas I think it was Walgreens was, was the real, was the real target. There, you know, the legislative history, which courts have looked to, to construe this provision talks about a K a claim against an insurance company out of state and the state insurance agent that sold the policy. So I don't think that distinguishes this case. They're always, yes, by definition, there's going to be a local defendant here who has some role, but you still have to look at who the real target of the action is. And those paragraphs in, in the McLaren complaint, make that abundantly clear here on judge Beavis. You mentioned the trapezoid complaint, just to be clear though, trapezoid hasn't made the local controversy argument. Judge McKee, do you have further questions for council while I have him up? I don't know. Thank you. All right. Thanks. We'll see you on rebuttal. Thank you. Good morning, your honors. May it please the court. Joseph Oseftin, the law firm, Denitus Oseftin and Prince for the plaintiff Tropicchio. That brought me to, that's 15 seconds right there. By far, my most coherent version of this argument is in my brief. I only have five minutes, so I'm just going to touch on a few things that council said. I noticed that in response to one of your honors questions, council said the McLaren plaintiff could have removed earlier. The reason he didn't say that the Tropicchio plaintiff could have removed is because he knows that he gave discovery to McLaren. He never responded to any of my written discovery in Tropicchio, which asked how many people bought notary services in UPS stores in New Jersey. I served that with the complaint on November 19th, 2020, because we were in New Jersey state court. That's the New Jersey state court practice. That discovery became due somewhere around January. I haven't done the math. They never objected, they never responded, and they produced anything to me. I know for a fact the day when I had the first inkling that it was possible that the number of class members was high enough to get to five million. That date was August 3rd, 2021, when I opened my browser and saw the removal petition. That is the very first time anybody in Tropicchio, the plaintiffs, knew that there was a million people who had bought notary services. I drafted the complaint. I put in the complaint. I don't know. Only the defendant knows how many people they sold notary services to, but plaintiff... Doesn't that foreclose your argument under the text? I mean, there's no document that the UPS service, the defendants received that indicated this. I say they received my complaint, which said I'm seeking over $100 per class member. It described who the class members are. It doesn't say how many there are. And we don't know. But your complaint also did disclaim the five million dollar amount in controversy, correct? Yes. So wouldn't that convey to a reasonable reader this is not a CAFA jurisdiction? Except if the document's going to somebody who already knows that they're sold services to a million people. I'm going to follow up on that because you specifically stated in the complaint, quoting, the total amount of controversy is far less than five million dollars because of the out-of-product expenses, as a matter of 12.50 per person, and the proposed class is less than 5,000 persons. That specific statement is in there. So don't you have a problem with that? Well, your honor, also, if you go further back in the complaint, it says in the class allegations, the plaintiff is a customer and has no idea, and the defendant's books and records have exclusive that number. I have to admit, because I drafted the complaint, I pulled that number based on an estimate of how many people I thought would have walked into a UPS store and asked somebody to notarize. But the complaint does say we didn't know. I guess one thing I do want to say is, these rules don't exist in a vacuum. They're supposed to do something. And in my opinion, what the removal statute is supposed to do is prevent a defendant from sitting on information that they have exclusive custody of for nine months. Where does it say that in the text of the statute? Well, the statute says that there are, in fact, two 30-day time periods. My initial complaint said who my class is and what I'm seeking. It also said, as we just covered, I don't know how many there are. To find that out, I served discovery on the defendant, asking how many of them are there. They never answered. They never objected. We go along for nine months. Your Honors, whoever I forget who asked the question was absolutely right. They could have done this on the eve of trial, according to them. I don't understand the argument that I don't know what I know. It just doesn't compute in my brain. Unless schizophrenia is involved, once you know there's a million customers, which they admit they knew, eight months before the removal, they knew it. And they're waiting on me to send them a paper, but they know that I don't know it because they refused to answer my discovery. The challenge, I think, and I think it's made out by Judge Bibas's question too, is textually, it says it has to be a document. If it's not disclosed in the complaint, and you've just said, I didn't disclose it in the complaint. In fact, I disclaimed it in the complaint. The clock doesn't start to run until the defendant receives a piece of paper. It doesn't say the fact that they have it. And all the case law seems to support their construction. What's your best argument textually that will allow you to say- My best argument is, and again, if I'm doing an individual suit, I know who my plaintiff is. My plaintiff is Bob. I know he's seeking a million dollars in damages. I've done class actions exclusively for 29 years now. It's getting to be a long time. I hardly ever know in consumer class actions how big the class is, because what happened is a person walked into my office and said I got overcharged 12 bucks. I understand the challenges from a litigation point of view- I plead the complaint to say- Counselor, you might want to let Judge Schwartz finish asking the question before you decide to interrupt her. I'm sorry. It's all right. No apologies needed. Thank you, Judge McKay. What I'm trying to say is we're trying to get you to focus on what we can do to find in your favor based on the text. And I think what you were trying to say is I put in my complaint, you have the records. And so I've put you on notice. Absolutely. That's my paper that tells you to start to look. To figure amount and contribution of class action. That's where I was leading up to. I know in an individual suit how much I'm seeking. I don't know in a class. I can put in the description of the class. I put in the dollar amount. If you do the math of my complaint, I'm seeking $130 per person. They already have the record saying how many. All I'm asking them to do is math. Multiply what they know and I don't by the number per person. They refused to do that for nine months. And then just days after they lost on an important issue in the appellate division, suddenly they know what they didn't know. They admit they didn't get any paper from me. So why did they know it in August and they didn't know it in January or February? Counselor? You haven't raised a local controversy exception here. It's not in your briefing. No, Your Honor. I have not. Okay. That's all I've got. That's all I have too. Judge McKinney, anything else for counsel? Nothing. Thank you. Thank you, counsel. We'll hear from your co-counsel. Good morning. Good morning. May it please the court, Kent Bronson from the Milberg Coleman firm for plaintiff of Abeli, Barbara McLaren. I'd like to, I have, I believe I have 10 minutes under the agreed upon division of time with my co-counsel, Mr. Austin. I'd like to start by addressing some of the questions that the court had of my opponents. I'm focusing in on this matter of the other paper. I think the court really honed in on the key issue here. When did they have knowledge of the supposedly missing information, the missing factor, and what was required essentially in order to trigger the second or arguably the first 30-day period? Let's look at that second one. It talks about an amended pleading motion order or other paper. Now, there's a canon we use in reasoning statutes. When we say or other, something at the end of a list, we say that other thing is probably going to be something pretty similar to the ones we've seen before. So, it's going to be something like a pleading motion or order. It's not enough to just have some general knowledge. What's your best case that there was some other paper akin to a pleading motion or order that put them on notice that the clock is ticking? Well, two points on that, Judge. Other circuits have addressed this issue, the scope of other papers, and addressed arguments back and forth about construing it narrowly versus construing it broadly. I think the consensus is that it should be construed broadly. None of them construes it broadly enough to help you. I mean, I didn't really see any circuit case law that construed other paper as any discovery coming from the defendant. Well, first, Your Honor, it is construed broadly enough to include discovery. From the defendant. Focus on that. And I understand your point saying that it should be coming from the plaintiff to the defendant, from the defendant to the plaintiff. And that's the point that I'm going to address right now. In this case, to me, it's a distinction without a difference. And I understand the case law. I believe one or two of your honors asked during the initial questioning, does this make sense? It doesn't make sense. The information came from them. It came to us. Now, if we had taken that document, attached it to an email and sent it back to them immediately, then the light bulb would have gone off and they would have had the information. The 30-day notice would have been triggered, even though it's the same information. Sorry, Your Honor. Mr. Pellmore makes the point that you're in the driver's seat. You can tick this off. You could say on information or belief, there are 100,000 people who were overcharged this amount or however many you think it is. You could start that clock ticking if you want it. So it's not like you're disabled from it. So why isn't that the answer? You're not going to be taken unawares here. You can say, fine, you've got 30 days now. Well, as in 99%, I think, percent, maybe even more, the plaintiff in these types of cases, these class action consumer cases, does not have any information in terms of the size of the class. That information is exclusively in the hands of the defendant. The more important point that I want to get to here, Your Honor, is that they distinguished this case from Romulus, which I believe Romulus was the case where the defendant did produce the discovery and then the plaintiff repackaged that and then sent it back. And that's what was the other paper that triggered the 30-day clock. Defendant says that's not the case here. Well, actually, that is the case here. And it's in the record. Actually, it's not in the appendix. And we apologize for that. But it is in the lower court record in their notice of removal. And what is it that's in the notice of removal that you, because it's part, it's on the docket, so it's not in the appendix, but it's part of the record. I've read the notice of removal. What is it you're drawing our attention to? Yes, Your Honor. Inexplicably, the defendants put in the appendix the notice of removal, but not the exhibits to notice of removal, not all of them. There is an exhibit A to the notice of removal. And this is docket 1-3 of the lower court docket. Exhibit A of the notice of removal, it's a fairly large document. But it contains the supplemental responses to plaintiff's request for production, supplemental responses to plaintiff's interrogatories. Now, there's discussion in the briefing about a motion to compel that plaintiff McClaren filed in or about, I believe it was March 3rd, 2021. That motion to compel attached all of these documents, all of these supplemental responses. These supplemental responses at various specific responses to interrogatories, for example, and RFPs, requests for production, not specifically numbers 4, 6, 21, 27, and 33, set forth or describe the spreadsheets that we're talking about here that set forth the transactions. So you're arguing now, which I don't recall seeing in your brief, you're arguing now that on March 3rd, the plaintiff produced and hence the defendant received information, the detailed information that would have allowed them to know it was removable on March 3rd? Absolutely right, Your Honor. You're describing the RFPs. I have in front of me the RFPs 4 and 6, and none of them has any numbers or any details. I don't quite understand how you say that is receiving a paper from, the defendant is receiving a paper from which they just have to do the computations. You have the responses? I'm sorry, Your Honor. Yeah, I'm looking at your request for production in the state court proceeding and then the responses. The responses describe the spreadsheets essentially and say that we're producing or we have produced. We defendants are producing these spreadsheets. Yes. Yes, Your Honor. How is that receipt from the plaintiff of a document that puts them on notice? That's a reference to the exact spreadsheets that we're discussing here. The spreadsheets that lay out the transactions for that period of time. But the spreadsheets attached? They're talking about. They're not, are they? I don't believe the exact spreadsheets were attached, but there's reference after reference. That puts us into the whole issue of subjective knowledge then. All I see is, quote, all documents and or data reflecting all information generated and or stored for any and all charges for notary services at stores DBA, the UPS stores New Jersey during the relevant time period. There's a reference to data, but there's no data included. There's a reference specifically to spreadsheets. There should be in those responses, Your Honor. That's our point. And I can check. But those were attached to a motion to compel and sent and filed with the court and sent back. Oh, the motion to compel attached the defendant's responses, which said, hey, there's a spreadsheet. The spreadsheet itself wasn't attached to the motion to compel. There was a mention of spreadsheets in the defendant's attachment. And you're saying that is enough for the paper to then put the defendant on notice that the clock is ticking? Absolutely. The mention of those exact spreadsheets, the exact same spreadsheets. And on top of that, there are meet and confer letters as well. There's a listing. Are the meet and confer letters attached to this? They are. They're all attached to this exhibit A to defend its notice. And I think Judge McKee either was making a comment or had a question. Sorry. So that's OK. Yeah. Yeah. It just seems to me that that's back into the realm of subjective knowledge. It puts the court in a position of having to look at all the attachments, not what the attachments refer to, and then get into a mini trial or an inquiry. Well, what would a person being confronted with this attachment know of being put on knowledge? No, as opposed to simply attaching the spreadsheet, which is exactly what I think we were saying in Foster. We were rejecting that approach. Well, Your Honor, this I think is where maybe the standard of reasonable intelligence comes in. There's a requirement that I think all the circuits have adopted this standard that a defendant has to apply some minimal level of reasonable intelligence to do these calculations. And so that level of inquiry cases where there was a number of people and an amount per person and you have to multiply the two that are within the four corners of the complaint. This is not one of those cases. In fact, if the complaint specified a certain number, as opposed to saying hundreds, maybe thousands, then we may well be that area. Although even if we take thousands, I don't think we get there using the 1250 figure per person. To be frank, Your Honor, I didn't think it was exclusively applied to those. I thought it was applied more broadly to complaints and complaints and other documents in combination with pleadings that would give defendants notice. Let's assume we don't think that just a reference to spreadsheets that weren't attached was enough. And we get passed, we take a formalistic read of these statutes, but we get to the local controversy exception, all right? Sorry, Judge, before we lose that subject, if you don't mind, because we do want to ask you a couple questions about that. But before we leave that, you have explained to us today that the March 3rd date should have triggered them notice. That wasn't in your brief, correct? We didn't miss that, right? We didn't see reference to March 3rd. I believe if it was, it perhaps wasn't clearly. But I think you may be right, Your Honor. Okay, so we have a possibility of a potential waiver issue, potentially, right? I'm sorry, Your Honor. We have a possibility of a waiver issue here because it wasn't raised as the date upon which you're relying. Because I don't remember seeing anything in the district court opinion mentioning it. I don't remember it in the briefs, but I could be wrong. I know there were discussions of the motion to compel or mentions of the motion to compel, I believe in our briefing below, there was a mention. But I'm talking to our court, not to us. You may be right, Your Honor. Okay, I'm sorry, Judge Bevis. Before we go to local controversies, let me just ask Judge McKee, do you have any other questions on timeliness? I don't, no, thank you. Okay, if you don't mind, I'm sorry, Judge Bevis, we can now go to local controversies. Okay, yeah, yeah, I'm sorry. So you've got the burden of proof on three points. You've got to show that two-thirds of the class are New Jerseyans, and you've got to show that you're seeking significant relief from a local defendant, and that a local defendant's conduct is a significant basis of the claims, right? So you've got problems on all three of these. The first one is, on the two-thirds of the class New Jerseyans, you heard Mr. Palmore. I've got a copy of the, you know, the state court request for production here, where you asked for all documents that the UPS store had about who paid fees, and they said the UPS store doesn't have documents responsive to this request. So is there anything else you would be drawing on if we gave you an opportunity to prove the two-thirds figure? What else would you induce to show that to bear your burden of proof? Well, two points on that, Your Honor. Number one, discovery was ongoing at the time. There were a number of documents. We had filed that motion to compel, which was granted. In a footnote, footnote 22, you say, it's probably just stuff that has to come from defendants. So there's nothing else you're going to be able to put on the table here, right? This is going to have to come from discovery. I believe so, Your Honor. And the discovery from the UPS store says they don't have anything, and the one UPS store that's represented here doesn't have anything. So is there any other way you're going to get anything, even if you got further jurisdictional discovery? Well, again, first of all, we don't necessarily believe that. We think it has to be litigated. Second of all, the franchisees, we believe, and again, we've named a class of defendant franchisees. We believe that they would have something like that. There are provisions in the notary manual, the notary operating manual. I may not be capturing the name correctly. For New Jersey, that either require or have a suggested best practice for notaries to keep logbooks of the addresses, names and addresses of anyone who comes in for which they notarize the document. So to the extent that practice was followed by the UPS franchisees, they're going to have that information. So if we wouldn't be able to get it from UPS, then we would be able to get it from a substantial amount of the franchisees. We might be able to get some franchisees if we let you. Okay, but you still have to overcome these two other things. Significant relief from a local defendant. Now, you alleged in paragraph 49 in your complaint, this is really the UPS store that's driving the train here. You alleged that they're requiring this fee. So how is it that you're seeking significant relief from a local defendant? Is it just that you've thrown in the liability allegation or is there more than that? I think there's more than that in terms of the fact that we've named a defendant class. We certainly are seeking to the extent that even if UPS was dismissed from the case, we would still have a case against the class of franchisees and we would be seeking certification of that class. That certainly is a significant body of which we would be seeking significant relief. Should we be looking at the whole class or only the named defendants here? In terms of the named defendants, we're not certain at this point to what level of culpability they have. That's something that needs to be investigated. It is, I would say, probably unlikely that they're responsible for all, you know, they would be found responsible for all the conduct of all 161 franchisees. But there may be some theory or some, you know, under joint and several liability under which we may be able to make some kind of a claim based on that. And I point to the cases we had in our brief that say that it's not necessarily the relief you can get, it's the relief that you seek from a certain defendant. And I think that should be enough in this case. All right, if we send it back, would you amend to limit your class of plaintiffs to just those who are resident in New Jersey? I mean, that assumes that you're allowed to amend at this point, which is an if. We would certainly consider doing that and I think I mentioned that in our class members who are not New Jersey citizens is certainly not two-thirds and we don't think it's. Should we treat this as frozen in time as of the time of the pleadings or should we give you an opportunity to amend? I believe that we should have an opportunity to amend if we would like to. I think that's generally standard practice in class actions. You don't have any authority on that, it just kind of makes sense. It kind of makes sense and I don't have any authority to point to, but generally from my experience in class actions, I know that the class definition is generally subject to amendment. So you can either amend or do discovery if we were to conclude that the removal was quote timely, but local controversy exception needs to be further examined. I think that's right. Those two avenues could possibly exist, you think? I think that's if you really look at it, it's so New Jersey focused. There's a third requirement that I don't think you've satisfied, right? Even if they're New Jerseyans, even if you think like we could be suing these people for money, you have to show that local defendants conduct is a significant basis of the class claims and your own allegation in paragraph 49 is this is all coming from the UPS store. The UPS store made us do it. So aren't they just ministerial in carrying it out? Isn't the gravamen of the conduct that the UPS store is ordering them to violate New Jersey law? Well, I think that that remains to be seen. Isn't that what you alleged and don't we have to take it as such at this stage on the pleadings? I think that there's a conspiracy claim here. Did they plead it as a conspiracy? I believe we did plead a conspiracy claim. We do have a conspiracy claim in the complaint, if I'm not mistaken. But the allegation is that this came from the UPS store. So the mastermind is the UPS store. The allegations, I believe, do read that way, Your Honor. However, you know, again, we're in the initial stages of discovery. It may come out that there was a more organized effort by the franchisees, that they acted as more of a block. We don't know that. Is there anything that we can take from the fact that your plaintiff was charged $5 where the other complaint alleges that there was a $12.50 fee? And does that give any kind of indication that maybe these individual franchisees were choosing how to implement their policy in whatever way they thought they wanted to as long as they charged more than the statutory amount? I'm sorry, could you repeat the last part of that question? Is there anything we can take from the fact that the one example that you give from Ms. McLaren's receipt is she was charged $5 instead of $2.50, correct? Yes, Your Honor. The Trapiccio complaint charged $2.50 plus $12.50. Yes, Your Honor. Can we take anything from the four corners of those two complaints to indicate that while there might have been a policy from the UPS store, the way the franchisees were but rather have some autonomy in the decision-making? Can we take anything from that? I think that's a very good point, Your Honor. I believe that they may have had more of a decision-making role in this. Again, we're in the stages of discovery. We're still having discovery fights with defendants. There may have been a policy that UPS dictated a minimum floor price, and they were free to charge anything over that and made their own decisions based on that. I'm going to ask you to pause for one second. I noticed just now that I no longer see Judge McKee's image, at least on the screen that's in the direction... He's visible on that other... All right. Can you see it, Judge McKee? I see you, guys. All right, then. Well, then, some people would say that's an unfortunate thing, but here we are. I'm sorry to interrupt you. Just from our vantage point, we didn't see him any longer. I'm going to ask Judge McKee then, since I couldn't see any body language, to know whether he had a question. Judge McKee? I don't know. Thank you. Thank you. Judge Bevis? Counselor, the requests about jurisdictional discovery are two footnotes in your brief. Are footnotes sufficient to preserve these issues for our consideration? I read a defendant's brief arguing that they aren't. I believe that they should be. This is something that's important enough. I apologize that the names of the cases are escaping me right now, Your Honor, but there are several cases that have considered the local controversy option and found that the proof standard had not been met. And more often than not, from my remembrance of the cases, what they do is remand to the district court and allow... Mondragon did that. I'm sorry? Mondragon, I think. Mondragon, yeah. I think you're right, Your Honor. Okay. Well, that's all. Okay. Anything else? All right, we'll hear from the UPS and Store-on-Rebeau. Thank you, Your Honor. I'd like to make, if I can, four quick points. Mr. Trapiccio's counsel complained about the UPS not providing discovery in the state court action. It's not really relevant to the legal statutory construction question here, but JA-235, there was a stay of we heard for the first time an argument based on some motion to compel in the state court that is doubly forfeited. It wasn't argued in the district court. It wasn't argued here. It was the first time I'd heard that. But by counsel's own description, there were merely references to the spreadsheet. They didn't have the numbers. The spreadsheet itself was not in the record. He's not contesting that. We understand that. Right. Okay. Thank you, Your Honor. Ms. McLaren's counsel also referred to the defendant class. Judge Bevis, I think you may have been suggesting this, but I mean, if you look at the plain text of the local controversy exception, this is addendum three to the blue brief. We reproduce it. This is 332D4A1, little one, big one. There are a lot of letters here. That refers to greater than two-thirds of the members of the proposed plaintiff's classes. So there's an express reference to a class. Then you go down to the next one, Roman two, at least one defendant is a defendant. It's the defendants who are in the case. And finally, the opportunity to amend, we think it is forfeited in any event that it's kind of black letter law that the provision which you're relying on may not apply here since the complaint didn't state the facts necessary to show jurisdiction. Why should we be applying it? Well, I don't think that changes the rule. I mean, Erie Insurance from this court and Hargit from the Eighth Circuit expressly addressed this very question about kind of plaintiff's post amendments in an attempt to defeat federal jurisdiction. And they consistently hold that they are not cognizable. And in fact- Hargit and which is your other best case? Erie Insurance. That wasn't a local controversy case, but it was still the same kind of argument. The thing about Hargit and other cases who sort of embrace that perspective you just articulated, in each one of those cases, the complaint disclosed to the readers that it was removable. And this scenario is one where everyone agrees the complaints did not disclose removability. And when you read the last clause of the provision that Judge Bibas was just bringing to your attention, it's predicated on the service by the plaintiff. Do you have the statute in front of you? I do. Okay. If you look at it, as of the date of service by plaintiffs of an amended pleading, and we've all agreed, you all have agreed that there is no such document. So D7, which is relied upon in Hargit and some of the other cases that stand for the proposition all had the complaint. So I think Judge Bibas's point is textually, don't you have the problem you're claiming your adversaries have a problem with in terms of the applicability of the provision? I don't think so. So this is of course not part of the local controversy exception. This is about just whether there is jurisdiction at all. So if you have an initial complaint in the state court that doesn't state the basis for jurisdiction, and then you have an amended complaint in state court that does, then the case, there is federal jurisdiction and it's removable. I think that's what this provision is getting at. It's not authorizing a plaintiff once in federal court to amend themselves out of federal jurisdiction, which is what the argument is here that they should be able to do. Well, aren't plaintiffs the master of their complaints? And in fact, one of the plaintiffs was trying to telegraph to the world, no federal court, please. Thank you. No, thank you. Right? No, they absolutely are. And so I'm not saying they can't amend the complaint if it stays in federal court, but they can't amend the complaint out of federal jurisdiction because the jurisdictional question and the remand question is judged by the state of the complaint and the pleadings at the time. But you're relying on D7 for that proposition, correct? We haven't expressly relied on D7. I think it is supportive, but I think this court's case in Erie Insurance, which expressly says we're not, they attempted to amend the complaint after removal to fix this problem and get it sent back to state court. We're not even going to look at it because it's not cognizable. All right. Judge Bibas, any other questions? Judge McKee? None. Thank you. All right. Thank you, counsel, for your time. Um, we thank counsel for their very helpful arguments. We know because of our statutory obligations, this was on a relatively fast track and we know you all worked very hard to get us the briefs in sufficient time and appear in front of us today so we can discharge our responsibilities by statute. So the court will take the matter under advisement and we stand adjourned.